IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

**CAROLYN BRAMLETT**     **PLAINTIFF**

**VS.**     **CASE NO. 2:06CV0003 JMM**

**CITY OF WEST HELENA HOUSING AUTHORITY, INC., ET AL.**     **DEFENDANTS**

**ORDER**

Pending before the Court are Plaintiff's Motion to Dismiss Without Prejudice and Defendants's Motion for Summary Judgment. Defendants have responded to Plaintiff's Motion to Dismiss. Plaintiff has failed to respond to Defendants's Motion for Summary Judgment. For the reasons stated below, Plaintiff's motion is denied (#30) and Defendants's motion is granted (#19).

Plaintiff, a Hispanic female, brings claims pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Arkansas Civil Rights Act of 1993 ("ACRA").

I. *Plaintiff's Motion to Dismiss*

Plaintiff seeks to dismiss her complaint pursuant to Federal Rule of Civil Procedure 41 because she has been unable to complete discovery in her case resulting in her not being able to fully present her case at trial. Defendants object to the dismissal without prejudice.

Plaintiff filed suit on January 3, 2006 alleging that Defendants failed to promote her based upon her race. The Initial Scheduling Order required the parties to meet and file their joint Rule 26 Report on or before July 21, 2006. Plaintiff's counsel did not respond to Defendants's attempt for a Rule 26 meeting resulting in Defendants filing their own Proposed Rule 26 Report. Plaintiff

eventually filed her Rule 26 Report on September 19, 2006, but only after the Court had issued a show cause Order on August 28, 2006.

A Final Scheduling Order was entered on September 22, 2006 with a trial date for the week of April 23, 2007, and a discovery cutoff date of January 29, 2007. Plaintiff did not contact Defendants to conduct any discovery, and in February of 2007 requested a continuance which was granted. A new trial date of November 13, 2007 was set with a new discovery deadline of August 20, 2007. Plaintiff did not contact Defendants or make any efforts to conduct any discovery regarding Defendants's witnesses or documents.

Defendants conducted discovery and filed a Motion for Summary Judgment on September 14, 2007. Plaintiff filed a Motion for Extension of Time and a Motion for Continuance on September 26, 2007 stating that due to Plaintiff's counsel' mother's illness, Plaintiff needed more time to respond. The Court continued the trial and gave an extension of time in which to respond to the pending motion up to, and including, November 1, 2007. On November 16, 2007 the Court issued an Amended Scheduling Order setting the trial for June 9, 2008. The November, 2007, Scheduling Order did not extend any of the discovery deadlines.

On October 8, 2007, Plaintiff attempted to arrange for deposition of Defendants's witnesses. Defendants informed Plaintiff that they would not agree to depositions being taken this long after the August 20, 2007 discovery deadline had passed. Three weeks later, Plaintiff filed a Second Motion for Extend of Time to respond to the pending Motion for Summary Judgment which was granted. The Court allowed Plaintiff up to, and including, December 15, 2007 to respond to the pending motion. On December 14, 2007, Plaintiff filed the pending Motion to Dismiss.

Federal Rule of Civil Procedure Rule 41(a)(2) states that "an action may be dismissed at the

Plaintiff's request only by court order, on terms that the court considers proper. If a Defendant has pleaded a counterclaim before being served with the Plaintiff's motion to dismiss, the action may be dismissed over the Defendant's objection only if the counterclaim can remain pending for independent adjudication."

It is clear that Plaintiff has not been diligent in her efforts to complete discovery or to respond to the Court's Orders.  The Court finds that (1) Plaintiff has had more than ample opportunity to complete discovery; (2) Plaintiff has not been diligent and has engaged in excessive delay; (3) Plaintiff's explanation for the need to take a dismissal is insufficient; and (4) Plaintiff should not be allowed to use a voluntary dismissal to avoid summary judgment.  Based upon these findings, it would not be proper to allow Plaintiff's claims to be dismissed without prejudice and, as stated below, the Court will grant Defendants's Motion for Summary Judgment.

II.  *Defendants's Motion for Summary Judgment*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds.  *Iowa Coal Min. Co. v. Monroe County*, 257 F.3d 846, 852 (8th Cir. 2001); Fed. R. Civ. P. 56.  The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A.  *Facts*

Plaintiff alleges that Defendants failed to promote her to the position of Executive Director of the Housing Authority based upon her race.  Defendants contend that Plaintiff's Title VII claim must be dismissed because the Housing Authority is not subject to the provisions of Title VII because it does not employee 15 employees and the remaining claims should be dismissed because

Plaintiff has failed to present a *prima facie* case of racial discrimination.

The Housing Authority owns and rents approximately 250 housing units to individuals and families eligible for subsidized housing under federal Department of Housing and Urban Development (HUD) regulations.

The Housing Authority is governed by a five-member Board of Directors. The current Board consists of: Chairman Douglas Simmons (85 year old, white male); Vice Chairman Rochester Johnson (82 year old, African American male); Reverend J.D. Alexander (77 year old, African American male); W.A. Rogers (85 year old, white male); and Suzann McCommon (55 year old, white female). The members of the board are volunteers who serve without compensation.

The Board of Directors is responsible for employing an Executive Director who reports directly to the Board. The Executive Director has the authority and responsibility to run the Housing Authority and to make virtually all employment decisions with respect to every other Housing Authority employee, including hiring, firing, and discipline. In addition, the Executive Director oversees the budget for the Housing Authority. The Executive Director also has ultimate responsibility for implementing and administering all the Housing Authority's programs.

The Housing Authority employs 10 employees, including six office staff and 4 maintenance employees. The Housing Authority has not employed 15 or more employees at any time during the current or preceding calendar year.

Former Executive Director Betty Holt hired the Plaintiff in June 1994 as a Housing Manager which is an entry level, clerical position at the Housing Authority. In August 2003, Holt promoted

Plaintiff to the Administrative Secretary. This was likewise an administrative clerical position with little or no discretion or judgment required.

In April 2005, Holt created the previously non-existent position of Assistant Executive Director for Plaintiff. Plaintiff's duties did not change after her job title changed. Holt was responsible for setting Plaintiff's salary for these positions.

Prior to working at the Housing Authority, Plaintiff's work experience consisted of seven years of work as a "Site Coordinator" for Mid Delta Community Services in Helena, Arkansas. Plaintiff's position was not in management, and she reported to several other employees, including the executive director. Plaintiff coordinated activities and meals for the senior citizens program.

Prior to her retirement in December 2005, Betty Holt was the Executive Director for the Housing Authority for over 22 years. Holt did not make a recommendation to the Board of Directors about her replacement. In her conversations with Board Chairman Simmons, Holt was adamant that she would not make a recommendation for the new Executive Director.

When she first discussed her retirement plans with Simmons, Holt did share her concern with him that Plaintiff might not be able to effectively supervise the maintenance staff. Specifically, Holt was concerned about Plaintiff's lack of supervisory experience and the fact that she had been a co-worker with the maintenance workers might render Plaintiff an ineffective supervisor.

Holt also believed there were many other areas that would require much more training for Plaintiff and that Plaintiff had a lot to learn about management. Holt believed that Plaintiff was still deficient in many areas, including working with government grants, handling a

yearly budget, and supervising personnel.

In June 2005, Holt formally announced her retirement to the Board, and the Board began the process of hiring her replacement. The first step was to prepare an advertisement for the position. Holt worked with the Board to develop the "job description" that was published in the newspaper to advertise the position.

Holt suggested that the Executive Director of the Housing Authority either have a Public Housing Manager Certification or obtain that certification within 12 months of being hired in the position. Regulations promulgated by the federal Department of Housing and Urban Development ("HUD") do not require that the Executive Director of the Housing Authority hold the certification.  The Housing Authority had the full authority and responsibility to set the educational requirements for its Executive Director.  The job advertisement listed other requirements and preferences as well as a brief outline of the job description.  The advertisement resulted in 17 resumes being submitted to the Housing Authority.

The Board of Directors met to review the resumes on September 27, 2005. From among those 17, the Board selected 4 candidates to interview: Plaintiff (Hispanic); Debbie Smith (African American female), the Housing Authority's Occupancy Specialist; Bill Lederman (white male), former General Manager/Publisher of the Daily World newspaper in Helena and Security Supervisor at Isle of Capri Casino; and Becky Fratesi (white female), the General Manager of the Barton-Lexa Water Assocation.

Four of the five Board Members, Johnson, Rogers, McCommon and Simmons, interviewed the candidates on October 5, 2005.  Reverend Alexander was unable to attend the interviews.

McCommon set an agenda for each interview and prepared a list of questions that the Board would ask each candidate. Each of the four applicants interviewed were asked the same series of questions. McCommon took notes of the responses of each of the four applicants. After consideration, the Board voted unanimously on October 10 in favor of hiring Fratesi who met all of the requirements in the job description.

Fratesi had been the General Manager of the Barton-Lexa Water Association for the last eight years. In that position, Fratesi had managed the Association's staff as well as oversaw and coordinated the activities of contractors working on Association projects. She had experience with the requirements of federal regulations, as the Association was regulated by the federal government in a similar fashion as the Housing Authority. As General Manager, she also prepared, managed, and oversaw the Association's annual budget, and she reported to a Board of Directors. Fratesi also had experience dealing with Association customers.

Rochestor Johnson decided that Fratesi was the best choice based upon her experience managing employees. Chairman Simmons was concerned about Plaintiff's lack of true supervisory experience based upon Holt telling him that she was concerned that Plaintiff would have a difficult time supervising the maintenance staff. Board Member W.A. Rogers was concerned that Plaintiff lived in Mississippi, and saw no proof that Plaintiff could manage people. McCommon was impressed with Fratesi's prior supervisory experience, her experience with federal grants at the water company and her knowledge of compliance with federal regulations. McCommon questioned Holt about the ethnicity of the two internal applicants, Plaintiff and Debbie Smith. When told that they were Hispanic and African American, respectively, he said, "Good."

The Housing Authority Board offered Fratesi the position on October 10, 2005.

She accepted, but was unable to leave her current employment and begin working at the Housing Authority until about December 5. Thereafter Holt worked with Fratesi until Holt's retirement.

Plaintiff testified that none of the Board members had ever said or done anything to her that would indicate they were biased against Hispanics with the exception of McCommon's questions concerning the ethnicity of herself and Smith. Plaintiff also testified that minority Housing Authority employees, including herself, were paid less Caucasian Housing Authority employees.

B. *Analysis*

    1. *Plaintiff's Title VII Claim*

Because it is undisputed that the Housing Authority did not employee the requisite fifteen employees for twenty or more calendar weeks in the applicable year, the provisions of Title VII are not applicable and Plaintiff's Title VII claim is dismissed. *See* 42 U.S.C. § 2000e(b).

    2. *Plaintiff's Arkansas Civil Rights Act and § 1981 Claims*

At the summary judgment stage in an employment discrimination action brought pursuant to the Arkansas Civil Rights Act and in which there is an absence of direct evidence of racial or ethnic discrimination, an employee must produce sufficient circumstantial evidence of illegal discrimination under the *McDonnell Douglas* paradigm by presenting a *prima facie* case of intentional discrimination. *Glegg v. Arkansas Department of Corrections,* 496 F.3d 922 (8th Cir. 2007) (ACRA); *Harris v. Hays*, 452 F.3d 714 (8th Cir. 2006) (§ 1981).

Once the plaintiff does this, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason. *Id.* If the employer satisfies this burden, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretext for unlawful discrimination. *Id.* To establish that an employer's legitimate, nondiscriminatory

reason is pretext for discrimination, an employee must offer evidence for a reasonable trier of fact to infer discrimination. *Matthews v. Trilogy Communications, Inc.*, 143 F.3d 1160, 1165 (8th Cir.1998).

To establish a *prima facie* case for a failure to promote case, Plaintiff must show that (1) she is a member of a protected group; (2) she was qualified and applied for an available position; (3) she was rejected; and (4) employees similarly situated but not part of the protected group were promoted instead. *See Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002).

To establish a *prima facie* case for a § 1981 claim[1], Plaintiff must show (1) membership in a protected class; (2) that the Defendants intended to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity. *Harris v. Hays*, 452 F.3d at 718.

The Court finds that Plaintiff has failed to establish a *prima facie* case under the ACRA because she failed to establish that she and Fratesi were similarity situated because they were not similarly qualified for the position of Executive Director.

Even if Plaintiff has established a *prima facie* case, she has failed to show that Defendants's

---

[1]Title 42 U.S.C. § 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Based upon the allegations in the complaint, it appears that Plaintiff is relying on the Right-to-Contract clause and not the Full-and Equal Benefit clause of §1981.

articulated legitimate nondiscriminatory reason for hiring Fratesi instead of Plaintiff was merely a pretext for intentional discrimination. In addition, the examples given by Plaintiff of instances where minority employees were paid less than Caucasian employees are not evidence of discrimination as these employees were not similarly situated.

Defendants have stated why they believed Fratesi was the superior candidate for the position of Executive Director and Plaintiff has failed to show how any of their reasons for having such a belief are a pretext for discrimination. McCommon's positive reaction to having minority applicants is not evidence of discrimination and, in fact, would be consistent with the Housing Authority's philosophy of being an equal opportunity employer.

For these same reasons, Plaintiff has failed to establish a *prima facie* case or to present evidence of pretext on her § 1981 claim. Based upon these finding, both of these claims are dismissed.

III. *Conclusion*

Plaintiff's complaint is dismissed with prejudice. Judgment will be entered accordingly.

IT IS SO ORDERED THIS   23   day of   January , 2008.


_____
James M. Moody
United States District Judge